Filed: 8/31/2017 5:05 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 19188759
By: Rolande Kain
9/1/2017 11:57 AM

17-CV-1067

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY W. KING | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | GALVESTON COUNTY, TEXAS |
| | § | Galveston County - 122nd District Court |
| AMERIHOME MORTGAGE | § | |
| COMPANY, LLC | § | _____ JUDICIAL DISTRICT |

**PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Bobby W. King, Plaintiff herein, filing this his Original Petition, Application for Injunctive Relief, and Request for Disclosures complaining of Amerihome Mortgage Company, LLC, Defendant herein, and for causes of action would respectfully show the Court as follows:

**DISCOVERY**

1.  Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

**PARTIES**

2.  Bobby W. King is an individual who resides in Galveston County, Texas and may be served with process on the undersigned legal counsel.

3.  Amerihome Mortgage Company, LLC is an entity formed under the laws of the State of Delaware which conducts business in Galveston County, Texas and may be served with process as follows:

> Amerihome Mortgage Company, LLC
> C/O CT Corporation System
> 1999 Bryan Street, Suite 900
> Dallas, TX 75201

Status Conference Set 11/30/2017

# Exhibit B-1

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Amerihome Mortgage Company, LLC because the Defendant is an entity formed under the laws of the State of Delaware which conducts business in Galveston County, Texas.

5. The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Galveston County, Texas because the subject matter of this lawsuit involves real property which is located in Galveston County, Texas. Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in Galveston County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

6. The subject matter of this lawsuit is the real property and the improvements thereon located at 1834 Oak Valley Drive, Kemah, TX 77565 (the "Property").

7. Bobby W. King ("King") purchased the Property on or about April 11, 2016. During the process of purchasing the Property, King executed a Note in the amount of $215,033 and the sellers executed a Warranty Deed With Vendor's Lien in which AmCap Mortgage, Ltd. DBA Gold Financial Services is listed as the Lender. A true and correct copy of the Warranty Deed With Vendor's Lien is attached hereto as Exhibit "1" and incorporated herein for all purposes.

8. Upon information and belief, the Note and related Deed of Trust were subsequently transferred to Amerihome Mortgage Company, LLC ("Amerihome") for which Cenlar FSB ("Cenlar") acts as the loan servicer.

9. King was hospitalized for several months in June 2016 after being hit by a car while riding his motorcycle. Soon after his release from the hospital, King attempted to bring his mortgage current but Cenlar would not accept his payments. Even though King was able to pay his mortgage payments at this point, he realized his only option was to enter into debt restructuring negotiations with Cenlar in order to modify the terms and conditions of the loan.

10. King was offered a loan modification by Cenlar during October 2016. King immediately completed and submitted the loan modification application along with the requested documentation; however, Cenlar continually contacted King requesting him to resubmit financial documents. The process of submitting documents, waiting weeks before Cenlar responded that they needed more documents, and Cenlar instructing King to submit a completely new loan modification application continued for 8 months. Additionally, Cenlar's representatives told King to cease making mortgage payments until he was notified the loan modification was complete. King became extremely worried about not making mortgage payments and frustrated that Cenlar kept losing documents so he began contacting Cenlar on a regular basis starting in December 2016 to help ensure his home was safe. The Cenlar representative assured King that Amerihome would take no action to foreclose on his Property while in loan modification status even though he was not making payments. In addition, the Cenlar representative stated that she was memorializing the conversation by contemporaneously drafting an agreement to that effect which would be signed by her supervisor and mailed to King so he would be assured that all was well - King continues to await that agreement.

11. King's most recent Uniform Borrower Assistance Form submission to Cenlar was in May 2017. A true and correct copy of the completed Uniform Borrower Assistance Form is attached hereto as Exhibit "2" and incorporated herein for all purposes. Accordingly, King thought his loan modification was imminent until he called Cenlar to check on the status of his loan modification in August 2017. A Cenlar representative informed King that, although his application was complete and in the process of being reviewed, his Property had been posted for foreclosure sale on September 5, 2017. King was shocked because he had not received any notices of default, acceleration of debt, or substitute trustee's sale. Apparently, Cenlar had initiated foreclosure proceedings without approving or denying King for the loan modification and despite their assurances to King that Amerihome would take no action to foreclose while he was in loan modification status (which he still was). A true and correct copy of the related Notice of [Substitute] Trustee's Sale, which was provided to Plaintiff by the undersigned legal counsel, is

attached hereto as Exhibit "3" and incorporated herein for all purposes.

12. Further, Cenlar violated King's due process right to cure any "default" by attempting to sell his Property at a foreclosure sale on September 5, 2017 without sending him proper and timely notice of Cenlar's intent prior to the foreclosure sale.

13. Accordingly, Plaintiff alleges that Amerihome Mortgage Company, LLC is about to wrongfully sell his Property at a foreclosure sale on September 5, 2017 in violation of the agreements between the parties, without proper and timely notice as required by the Texas Property Code, and in violation of Federal Regulations regarding the loss mitigation process.

## FIRST CAUSE OF ACTION:
## VIOLATION OF TEXAS PROPERTY CODE

14. To the extent not inconsistent herewith, Bobby W. King ("King") incorporates by reference the allegations made in paragraphs 1 through 13 as if set forth fully herein.

15. Pursuant to the provisions of the Texas Property Code, the holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. If the mortgagee intends to accelerate the maturity of the debt, the notice must unequivocally inform the mortgagor of the mortgagee's intention. A proper notice of default must give the borrower notice that the alleged delinquency must be cured; otherwise, the loan will be accelerated and the property will go to foreclosure. Prior to a foreclosure action, the noteholder is also required to give the home owners clear and unequivocal acceleration notice. Effective acceleration requires two acts: notice of intent to accelerate and notice of acceleration.

16. In the instant matter, Plaintiff never receive proper notice of default or notice of acceleration that would allow the noteholder to foreclose.

## SECOND CAUSE OF ACTION:
## BREACH OF CONTRACT

17. To the extent not inconsistent herewith, Bobby W. King ("King") incorporates by reference the allegations made in paragraphs 1 through 13 as if set forth fully herein.

18. The actions committed by Amerihome Mortgage Company, LLC ("Amerihome") constitute breach of contract because:

    A. There exists a valid, enforceable contract between King and Amerihome;

    B. King has standing to sue for breach of contract;

    C. King performed, tendered performance, or was excused from performing his contractual obligations;

    D. Amerihome breached the contract; and

    E. The breach of contract by Amerihome caused King's injury.

### THIRD CAUSE OF ACTION:
### COMMON LAW FRAUD

19. To the extent not inconsistent herewith, Bobby W. King ("King") incorporates by reference the allegations made in paragraphs 1 through 13 as if set forth fully herein.

20. The actions committed by Amerihome Mortgage Company, LLC ("Amerihome") [by and through its agent Cenlar FSB ("Cenlar")] constitute common law fraud because Cenlar made false and material representations to King when informing King that Amerihome would take no action to foreclose on his Property while in loan modification status despite King ceasing to making mortgage payments at Cenlar's request - King's account was still being reviewed for a loan modification yet Amerihome posted his Property for foreclosure sale on September 5, 2017. Cenlar knew that these representations were false or made these representations recklessly, as a positive assertion, and without knowledge of its truth. In addition, Cenlar made these representations with the intent that King act on them and King relied on these representations which caused King's injury.

### FOURTH CAUSE OF ACTION:
### PROMISSORY ESTOPPEL

21. To the extent not inconsistent herewith, Bobby W. King ("King") incorporates by reference the allegations made in paragraphs 1 through 13 as if set forth fully herein.

22. The actions committed by Amerihome Mortgage Company, LLC ("Amerihome") constitute promissory estoppel because:

    A. Amerihome made a promise to King;

    B. King reasonably and substantially relied on the promise to his detriment;

    C. King's reliance was foreseeable by Amerihome; and

    D. Injustice can be avoided only by enforcing Amerihome's promise.

### FIFTH CAUSE OF ACTION:
### VIOLATION OF RESPA/REGULATION X

23. To the extent not inconsistent herewith, Bobby W. King ("King") incorporates by reference the allegations made in paragraphs 1 through 13 as if set forth fully herein.

24. The Real Estate Settlement Procedures Act ("RESPA") dictates that "[a] loan servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41 (b)(1). Additionally, a loan servicer must "[n]otify the borrower in writing within 5 days after receiving the loss mitigation application ... that the servicer has determined that the loss mitigation application is incomplete". *Id.* § 1024.41(b)(2)(i)(B).

25. Further, RESPA prohibits a loan servicer from making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process if the borrower submits a "complete loss mitigation application" during the 120-day pre-foreclosure review period or before the servicer has made the first notice of filing. *Id.* § 1024.41(f). Additionally, RESPA prohibits a loan servicer from moving for foreclosure if the borrower submits a "complete loss mitigation application" after the servicer has made the first notice or filing but more than 37 days before a foreclosure sale unless:

    (a) the servicer has sent the borrower a notice that the borrower is not eligible for any loss mitigation option and the appeal process of the pertinent section is not applicable;

    (b) the borrower has not requested an appeal within the applicable time period, or

(c) the borrower's appeal has been denied. Id. § 1024.41(f) - (g).

26. As such, the actions committed by Amerihome Mortgage Company, LLC ("Amerihome") are a violation of RESPA because:

    A. King was working with Amerihome pursuing loss mitigation options;

    B. Amerihome did not exercise reasonable diligence in obtaining all documents needed to complete King's loss mitigation application;

    C. King submitted a complete loss mitigation application prior to Amerihome's first notice of filing;

    D. Alternatively, King submitted a complete loss mitigation application more that 37 days prior to the foreclosure sale;

    E. Amerihome failed to notify King within 5 days after submission of missing documents that his application was incomplete;

    F. Amerihome completed the violation by posting King's Property for foreclosure sale on September 5, 2017.

## DAMAGES:
## ACTUAL DAMAGES

27. Plaintiff is entitled to recover his actual damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## EXEMPLARY DAMAGES

28. Plaintiff is entitled to recover his exemplary damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## ATTORNEYS' FEES

29. Plaintiff was forced to employ the undersigned attorneys to represent him and have agreed to pay them reasonable attorneys' fees for their services. Plaintiff is entitled to recover his reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

37. The granting of the relief requested is not inconsistent with public policy considerations.

## BOND

38. Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A. Defendant be cited to appear and answer herein;

B. The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C. A Temporary Restraining Order be issued restraining Defendant, its agents, employees, officers, directors, shareholders, and legal counsel, and those acting in concert or participation with him who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit and is commonly known as 1834 Oak Valley Drive, Kemah, TX 77565 as well as from taking any legal action to evict Plaintiff and any other occupants from or enforcing a writ of possession regarding the aforementioned property;

D. A Permanent Injunction be entered enjoining Defendant from the same acts listed in Paragraph C above; and

E. Upon final hearing or trial hereof, the Court order a judgment in favor of Bobby W. King against Amerihome Mortgage Company, LLC for his actual damages, exemplary damages, reasonable attorneys' fees, all costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled.

## CONDITIONS PRECEDENT

30. All conditions precedent to the Plaintiff's right to bring these causes of action have been performed, have occurred, or have been waived.

## REQUEST FOR DISCLOSURES

31. Amerihome Mortgage Company, LLC is hereby requested to disclose to Bobby W. King, within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

32. To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraph 1 through paragraph 30 as if set forth fully herein.

33. Unless Defendant is enjoined, Plaintiff will suffer probable harm which is imminent and irreparable since Defendant is about to sell Plaintiff's Property at a foreclosure sale on September 5, 2017 thereby depriving Plaintiff of ownership of the Property. Further, Defendant may take legal action to evict or otherwise cause Plaintiff to be dispossessed of the Property. Plaintiff has no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiff may avail himself will not give him as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

34. Therefore, Plaintiff requests that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain Defendant from selling the real property which is the subject matter of this lawsuit and is commonly known as 1834 Oak Valley Drive, Kemah, TX 77565 as well as from taking any legal action to evict Plaintiff and any other occupants from or enforcing a writ of possession regarding the aforementioned property.

35. Plaintiff further requests that, upon trial on the merits, Defendant be permanently enjoined from the same acts listed in Paragraph 34 above.

36. Plaintiff is likely to prevail on the merits of the lawsuit as described above.

Respectfully submitted,

    VILT AND ASSOCIATES, P.C.

By: _____
    ROBERT C. VILT
    Texas Bar Number 00788586
    Email: clay@viltlaw.com
    ERICK DELARUE
    Texas Bar Number 24103505
    Email: erick@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:  713.840.7570
Facsimile:   713.877.1827
ATTORNEYS FOR PLAINTIFF

CAUSE NO. _____

| | | |
|---|---|---|
| **BOBBY W. KING** | § § | **IN THE DISTRICT COURT OF** |
| **v.** | § § | **GALVESTON COUNTY, TEXAS** |
| **AMERIHOME MORTGAGE COMPANY, LLC** | § § § | **_____ JUDICIAL DISTRICT** |

| | | |
|---|---|---|
| STATE OF TEXAS | § § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF GALVESTON | § | |

### AFFIDAVIT OF BOBBY W. KING

BEFORE ME, the undersigned authority, on this day personally appeared Bobby W. King who, being duly sworn, deposes and says:

1. "My name is Bobby W. King. I am the Plaintiff in the above-captioned lawsuit. I have read the Plaintiff's Original Petition, Application for Injunctive Relief, and Request for Disclosures to which this Affidavit relates and offer this Affidavit in support of the statements and arguments asserted therein.

2. The subject matter of this lawsuit is the real property and the improvements thereon located at 1834 Oak Valley Drive, Kemah, TX 77565 (the "Property").

3. I purchased the Property on or about April 11, 2016. During the process of purchasing the Property, I executed a Note in the amount of $215,033 and the sellers executed a Warranty Deed With Vendor's Lien in which AmCap Mortgage, Ltd. DBA Gold Financial Services is listed as the Lender.

4. Upon information and belief, the Note was subsequently transferred to Amerihome Mortgage Company, LLC ("Amerihome") for which Cenlar FSB ("Cenlar") acts as the loan servicer.

5. I was hospitalized for several months in June 2016 after being hit by a car while riding my motorcycle. Soon after my release from the hospital, I attempted to bring my mortgage current but Cenlar would not accept my payments. Even though I was able to pay my mortgage payments at this point, I realized my only option was to enter into debt restructuring negotiations with Cenlar in order to modify the terms and conditions of the loan.

6. I was offered a loan modification by Cenlar during October 2016. I immediately completed and submitted the loan modification application along with the requested documentation; however, Cenlar continually contacted me requesting me to resubmit financial documents. The process of submitting documents, waiting weeks before Cenlar responded that they needed more documents, and Cenlar instructing me to submit a completely new loan modification application continued for 8 months. Additionally, Cenlar's representatives told me to cease making mortgage payments until I was notified the application was complete. I became extremely worried about not making mortgage payments and frustrated that Cenlar kept losing documents so I began contacting Cenlar on a regular basis starting in

December 2016 to help ensure my home was safe. The Cenlar representative assured me that Amerihome would take no action to foreclose on my Property while in loan modification status even though I was not making payments. In addition, the Cenlar representative stated that she was memorializing the conversation by contemporaneously drafting an agreement to that effect which would be signed by her supervisor and mailed to me so I would be assured that all was well - I continue to await that agreement.

7. My most recent Uniform Borrower Assistance Form submission to Cenlar was in May 2017. Accordingly, I thought my loan modification was imminent until I called Cenlar to check on the status of my loan modification in August 2017. A Cenlar representative informed me that, although my application was complete and in the process of being reviewed, my Property had been posted for foreclosure sale on September 5, 2017. I was shocked because I had not received any notices of default, acceleration of debt, or substitute trustee's sale. Apparently, Cenlar had initiated foreclosure proceedings without approving or denying me for the loan modification and despite their assurances to me that Amerihome would take no action to foreclose while I was in loan modification status (which I still was).

8. Further, Cenlar violated my due process right to cure any "default" by attempting to sell my Property at a foreclosure sale on September 5, 2017 without sending me proper and timely notice of Cenlar's intent prior to the foreclosure sale.

I have read the foregoing Affidavit and attest that the information contained therein is true and correct in all respects based upon my personal knowledge.

_____
BOBBY W. KING

SUBSCRIBED AND SWORN TO BEFORE ME on this the 31st day of August, 2017.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS
My commission expires: 4-26-2019



JAIME D VILLAGRAN
NOTARY PUBLIC
STATE OF TEXAS
My Comm Expires 4-26-2019